## The People v. Howard C. Bristol.

*Statute construed.* The statute (*Comp. L.* § 5734) which provides for the punishment of any one who takes or entices any female under sixteen years of age, from her father, mother or guardian, etc., without their consent, either for the purpose of prostitution, concubinage or marriage, was intended to cover every purpose of unlawful enticement of such female to sexual intercourse.

*No merger between felonies.* Upon a trial for this offense, evidence tending to show that whatever unlawful design existed was carried out, would not defeat a conviction on the ground that the offense, when complete, would amount to seduction, and should be so charged; since both offenses are felonies, and there is no room for the doctrine of merger.

*General exception to charge insufficient.* An exception "to each and every part of the charge given, specifically," is too general.

The charge, as given, did not go beyond propriety in the fullness of the instructions given to the jury. Nothing was said which could possibly have misled the jury, and no comments were made which exceeded a proper judicial discretion.

*Heard and decided May 10.*

Exceptions certified from St. Clair Circuit.

The defendant was charged with the abduction of Mary L. Cottrell, a female under sixteen years of age, for the purpose: 1. Of marriage; 2. of concubinage; 3. of prostitution; each purpose being alleged in a separate count. The plea was not guilty, and the verdict was guilty as charged in the second count.

The counsel for the People, to maintain said issue, on their part, introduced witnesses and gave testimony tending to show that respondent, on the 11th day of June, A. D. 1870, at the township of Cottrelville, in the county of St. Clair, made an agreement with Mary L. Cottrell, a female under the age of sixteen years, to wit: of the age of thirteen years, to elope with him and go to Chicago to get married; that afterwards, on the same day, the said Mary L. Cottrell was at a neighbor's house, by permission of her father, William A. Cottrell, at a sewing or quilting bee; that the respondent came there with a horse and buggy and requested said Mary to take a ride with him; that she went with him and they rode together to Detroit, where respondent registered at a hotel, an assumed name and place of residence, as follows: "H. Clark and wife, Mt. Clemens;" that he called for a room at a hotel, and that they occupied the same room and same bed during the night, and that said respondent then and there the same night had sexual intercourse with her; that respondent told her at Detroit that they were just the same as married, but that they ought not to sleep together until married; that the next day they rode together to Disco, in the county of Macomb, and there spent the night, occupying the same bed, and where respondent again had sexual intercourse with her; that the next day they rode together to the city of St. Clair, in said county of St. Clair, and the respondent took her to the house of a relative of his, and soon after their arrival in said city they were found

by her father, and the respondent was arrested; that the
father of said Mary did not consent to her going away or
being with respondent, and that respondent took her away
from the custody of her father, who had the legal charge
of her person, without his consent, and against his will;
that respondent is a relative of the mother of said Mary,
by marriage, and had been living and making his home at
the house of said William A. Cottrell, father of the girl,
for about two years prior to the time he took her away;
that he had been a teacher of the district school which
Mary attended; that respondent and Mary had talked with
each other about marrying, about two years prior to their
going away; that Mary asked him one day, going to the
school-house, which of the girls he liked the best, and he
answered, I like you the best, and said she must wait six
years for him; that he expected to get part of his father's
property, and to have a home in Chicago, and that she
should have a piano, silk dresses and gold rings; that
they were engaged to be married some time before they
went away together; that Mary wanted to marry respond-
ent, and on the way to Detroit, at New Baltimore, she
expressed a desire to get married, and was put off by
respondent, and told to wait until they got to Detroit;
that respondent was informed by her that her father did
not wish her to go with him, and that her father had
threatened to punish her if she was ever seen with him or
went with him at all; that after they had started for
Detroit, he asked her if they hadn't better turn around and
go home and get her father's consent; that she said no,
that she was afraid to go home then, on account of the
punishment her father had threatened; that after they
had got to St. Clair, and before the arrest of respondent,
he talked of getting a carriage, and going to Vicksburg,
a town north of St. Clair, and talked of going to Chi-

cago; that respondent had sexual intercourse with her before he took her away from Cottrelville to Detroit.

The defendant made a statement, denying having ever had any improper sexual intercourse with said Mary L. Cottrell.

The following requests to charge, preferred by the defendant, were refused, to wit:

1. That under our statute the crime charged consists in the purpose for which the female is taken or enticed away, —the mere taking or enticing not being criminal, unless done with one of the purposes mentioned in the statute.

2. If the jury believe that the defendant's purpose was seduction, and that he did "seduce and debauch Mary L. Cottrell, an unmarried woman," then he is guilty under the law punishing seduction, but cannot be convicted under the information in this case.

3. If the jury believe that the defendant had carnal intercourse with Mary L. Cottrell, to which her assent was obtained by a promise of marriage, and to which, without such promise, she would not have yielded, then his offense is seduction, and not punishable under this information.

4. That the proof that the defendant had connection with Miss Cottrell several different times will not support the charge of concubinage, or justify the jury to convict the defendant of an intent or purpose to make her a concubine.

And the said circuit judge charged the jury as follows: The crime consists in the taking and enticing away any female under the age of sixteen years, from her father, mother, guardian or other person having the legal charge of her person, without their consent, either for the purpose of prostitution, concubinage or marriage.   One or all of three purposes are necessary, and unless some one of the

23 MICH.—16.

purposes is satisfactorily proved, the defendant cannot be convicted.

The law supposes a child of the tender age of less than sixteen to be incapable of an understanding consent, and no act of hers can do away with the necessity of the parent's or guardian's consent. Her willingness or unwillingness to go with the accused is of no importance, except so far as it might enable you to determine whether she was taken or enticed away. The very term enticing away implies her consent.

Any one who designedly, by means of gaining the affections of a female child under sixteen years, gains such an influence over her as to make her desirous of going with him and yielding to his wishes, may be presumed to have enticed her away, if she yields to such influence and goes away with him. In such case she could hardly be said to have a will of her own. Her will and wishes would be subordinate to, and controlled by, his will or wishes, however expressed. Words of enticement or persuasion are not necessary if by the acts and conduct proved there is satisfactory evidence that he had got such a control over her that his will and desires controlled or guided her actions, and that she went with him, yielding to his will.

If a defendant should use his position as a teacher, as a relative, or member of the family, his superiority in age or position, and give such a young girl to understand that she was the object of his affections, permit her to express a premature love without chiding, and listen to her suggestions to elope with him, and afterwards furnish the means and take her away, it would be a question of fact with you whether he was not the enticer, and responsible party in such proceeding. You may ask yourselves, is it reasonable to suppose that so young a girl could or would be the seducer and enticer of a person of the age and

position of the defendant, or is it most reasonable to conclude that he was the actor and she the one, whose youth and inexperience yielded to his persuasions.

The law assumes the man to be the stronger, and everywhere seeks to protect the weak from the passions and power of the stronger. It is necessary, and our laws undertake to provide for that necessity, for the preservation of society, that the young and weak shall be protected from the old and strong; and, universally, females are treated as the weak, and the law makes them its peculiar wards. It acts upon the theory that men are the active agents or movers, and women are the passive dependents upon man's gallantry and recipients of his protecting love.

Hence, there are no laws punishing women for seduction, abduction or other offenses against modesty requiring superior power or strength. They are supposed to be incapable of committing such offenses. They look to us for protection, whilst we must take care of ourselves, no matter what may be their blandishments to lead us astray. After arriving at the age of maturity they are capable of assent; they cease in that respect from a certain kind of minority, but before that the law protects them and their parent's rights over them, and they cannot do anything to take themselves away from that protection, or doing away with the necessity of parent's assent. Enticing or taking away a child within the age of sixteen from a neighbor's house, where she is permitted to be for a visit or other temporary purpose, would be a taking from the father's custody as much as if from his house.

It is not claimed that · the purpose of prostitution is proved. The prosecution claims that one of the purposes charged, that of concubinage, has some proof in its support. The legal definition of concubinage, as intended by the statute, and as applicable to this case, is " The carnal

connection between a man and a woman unmarried, or the cohabitation of a man with a woman to whom he is not united by marriage." If you find that the purpose of defendant in taking or enticing the girl, was that of carnal connection with her, or to cohabit with her, then, if the other necessary facts are found to be proved, he may be found guilty under the second count, charging purpose of concubinage. The length of time he intended to cohabit or continue the improper connection with her, is immaterial. Proof of actual cohabitation or intercourse, if satisfactorily proved, would tend to prove with what purpose the taking or enticing was done. If you should find that he started away with Mary with the then-intended purpose of marriage or concubinage, the crime would be complete, though before consummation of his purpose he was arrested or prevented from its consummation; or even if, after taking her away for such purpose, he repented, and did not carry out his purpose, that fact would be an appeal to mercy, but not to justice or the rules of law; the crime was complete whenever he took her away (if you so find) for either of the purposes expressed in the statute, no matter how far he may have gone or how soon he may have returned.

In weighing the testimony of the girl claiming to have been abducted, you will consider her age and situation, you will ask yourselves what you would expect of your own children of that age, and by your experience as men you will judge of the probability of her statements,—whether she would be likely to remember all that had occurred: Did she intend to state things truly or falsely? Did she intend to cover up any thing, or state any thing not said or done, or differently from the way it was said or done, intentionally, with a design to injure defendant, or indifferently as to his rights? If either, her testimony should be care-

fully scrutinized, if not entirely rejected. In considering it, judge by her appearance, and all the other surroundings of the case. Has she been in any way substantially corroborated? Is there any other proof to sustain her,—if so, what, and by whom? Did defendant take her in his buggy away with him? Did they ride together to Detroit? Did defendant call for a room there for both, as husband and wife? Did he register an assumed name? Did he spend the night in the same room, or in the same bed? Did they, not being married, cohabit together, and have you other, or any, proof of other acts tending to show his purpose? Then, if the proof convinces you beyond reasonable doubt that the girl was under sixteen, that she was taken or enticed away by defendant for either of the purposes of prostitution, concubinage, or marriage, without her father's consent, you have a simple duty,—to announce by your verdict your convictions. But there must be no reasonable doubt as to proof of any element of the crime. A reasonable doubt is such as would hinder or prevent you from entering any important undertaking. It is not a mere doubt, but must be founded upon such a lack of proof as to compel you to say that you are not by the proof convinced of his guilt.

You are the sole judges of what facts have been proved, and if, in giving illustrations of the applications of the general rules of law, I have alluded to facts, you are to have no impression of what I may think of the facts, or of what facts I may think have been proved. If I have given you any such impression, it has been by inadvertence, and you must divest yourselves of it. With the court's opinion of what the facts are you have nothing to do. Judge of the facts for yourselves; find what facts have been proved tending to prove the crime charged; apply the law as I have announced it to you to the facts you find proved, and then render your verdict according to your conscientious

convictions, without regard to sympathy or consequences. If you are satisfied beyond a reasonable doubt by the proofs and law that the defendant is guilty, then say so, and leave the result to the court. If not so satisfied, say not guilty, with equal disregard of consequences. Do your duty honestly, according to your oaths and consciences; and the law, the prisoner and the People must be satisfied.

The defendant excepted in due form to the refusals to give the charges requested, and to each and every part of the charge given specifically.

*Dwight May, Attorney General,* for the People.

*John Atkinson,* for the defendant.

PER CURIAM.

The exceptions chiefly insisted upon relate to the nature of the crime intended to be covered by the statute, and to the charge of the court as trenching upon the province of the jury.

The statute (*2 Comp. L.,* § *5734*), under which the prosecution was had, punishes any one who takes or entices any female under sixteen years of age, from her father, mother or guardian, etc., without their consent, either for the purpose of prostitution, concubinage or marriage.

Two points are raised on the statute, viz: First, that inasmuch as the evidence tended to show that whatever unlawful design existed was carried out, the offense should have been charged as seduction; and second, that there could be no offense in any enticing with a design of having illicit intercourse, unless it was to be continuous, and that concubinage would not exist without some relation of more or less permanence. We do not think it material whether the offense when complete would amount to seduc-

tion or not, as they are both felonies, and there is no room for the doctrine of merger. If the offense committed comes within the terms of the statute, the prosecution was properly laid.

We think the statute intended, in enumerating marriage, prostitution and concubinage, to cover every purpose of unlawful enticement to sexual intercourse. The word " concubinage " has no settled common-law meaning, and if we look at the derivation and the usage of etymologists, we shall find it to be a comprehensive term, covering any illicit intercourse. We have no doubt the legislation, was intended to cover all such cases, and if the question had been more doubtful, we should not be disposed to explain away the meaning of a wholesome statute in order to create an exception clearly within the mischief, and leave entirely unpunished attempts to destroy the virtue of young females, merely because there was no design after ruining them, of taking any further notice of them. Such a claim does not appeal very strongly to equitable consideration.

The exception to the charge is too general. But we do not think the court can be properly charged with having gone beyond propriety in the fullness of the instructions given to the jury. There was nothing said which, so far as appears, could have possibly misled them, and no comments were made which exceeded a proper judicial discretion.

The conviction was right, and judgment should be rendered upon it.